## HARSTAD *v.* H. A. BAUMAN CO.

SALES—PAYMENT—ACCOUNT STATED.

 Plaintiffs sold their output of poles and posts to the Michigan Cedar & Lumber Co., which paid for them by notes and directed plaintiffs to ship the timber to defendant. After the maturity of one of the notes, defendant paid it and sent a statement crediting themselves with that amount on their account with plaintiffs. In response, plaintiffs mailed a statement to defendant adopting the balance so shown and adding other

items which defendant subsequently paid according to the
invoices. The Michigan Cedar & Lumber Co. gave its notes
for the amount then claimed by plaintiffs to be due on the
original contract, and, becoming subsequently bankrupt, de-
faulted in paying them. Plaintiffs brought action against the
consignees of the lumber and sought to recover the amount
credited for the payment of the first note. *Held,* that the
payment was properly credited on defendant's account and
the striking of balances and settlement by the several notes
constituted an account stated.

Error to Delta; Stone, J. Submitted April 18, 1910.
(Docket No. 58.) Decided July 14, 1910.

Assumpsit by Ole Harstad and Phil Labre, copartners
as Harstad & Labre, against the H. A. Bauman Com-
pany for goods sold and delivered. A judgment for
plaintiffs is reviewed by defendant on writ of error. Re-
versed.

*L. D. Eastman (Eastman & Martineau,* of counsel),
for appellant.

*A. H. Ryall* and *Clyde Hayden,* for appellee.

BLAIR, J. This is an action of assumpsit to recover
from the defendant as successor of Lindsley Bros. a bal-
ance of the purchase price of certain cedar posts and poles
claimed to be due to plaintiffs. Several days prior to
May 8, 1903, plaintiffs entered into an executory contract
with the Michigan Cedar & Lumber Company of Menom-
inee, Mich., to sell to it their entire output of posts and
poles. The contract, among other provisions specifying
prices, etc., contained the following:

"Terms of payment to be as follows: A payment of
$2,500.00 to be made on or before May 6th in negotiable
paper, which is backed by the Lindsley Bros. Co., of
Menominee, Mich. The balance of the purchase price to
be paid upon receipt of invoices for each car, in the sum
of 75 per cent. for each invoice or car when loaded, in
cash less 2 per cent., and the balance of 25 per cent. to
be paid 60 days from same date, the payments of cash not
to begin until said Michigan Cedar & Lbr. Co. have re-

ceived enough material to cover the first payment above mentioned of $2,500.00, which payment at this date or writing has been paid and accepted by yourselves. The poles are to be inspected on grounds at once by the Michigan Cedar & Lbr. Co., according to the N. W. W. Cedar Men's Association inspection rules."

The Michigan Cedar & Lumber Company was under the control and management of A. L. Lindsley, a brother of George L. Lindsley. George L. Lindsley was president, and his brother E. A. Lindsley was secretary and treasurer, of the Lindsley Bros. Co., but neither of them, so far as this record shows, was connected with the Cedar Company. On or about May 8, 1903, two notes for $1,250 each, due, respectively, in 60 and 90 days, were executed and delivered to plaintiffs by the Cedar Company. These notes were indorsed before delivery by Lindsley Bros. Co., were at once discounted at a bank, the cash paid to plaintiffs and the amount credited upon their books to the Cedar Company. After the making of the contract the Cedar Company directed the plaintiffs by letter to ship the poles to the Lindsley Bros. Co. On May 14, 1903, plaintiffs shipped to Lindsley Bros. Co. poles to the amount of $3,606.60, on June 9, 1903, poles to the amount of $398.05, and on July 11, 1903, poles to the amount of $134.30. With the exception of a later invoice of $27, the above items comprise the shipments to Lindsley Bros. Co. of the poles covered by the contract. The posts covered by the contract were shipped to the Cedar Company, and plaintiffs kept separate accounts of the poles and posts. Up to and including May 14, 1903, plaintiffs had shipped to the Cedar Company posts to the amount of $513.12. September 1, 1903, the Cedar Company wrote the following letter, which was received by plaintiffs:

"Enclosed please find check for $446.32 to apply on our account; also an acceptance for 60 days amounting to $526.83 which we trust you will find acceptable, as you desired good payment the first of this month. We also hope that you have written the Lindsley Bros. Co. and they have helped you out in some manner. When you

first began shipping this material, we wrote you to invoice all poles to the Lindsley Bros. Co., and this of course carries the demand on them for the payment of the same when due, which we trust you have, less $1,250 on one note which they have paid, we remain," etc.

On September 14, 1903, Lindsley Bros. Co. sent the following statement, which was received by plaintiffs:

> HARSTAD & LABRE,
> Bark River, Mich.
>
> In Account with
>   LINDSLEY BROTHERS COMPANY,
>       Dealers in Cedar Products.
>
> Interest at 7 per cent. charged on accounts after due. Exchange and express charges on remittance must be prepaid.
>
> 1903.
>
> | | | | | | |
> |---|---|---|---|---|---|
> | May | 19 | Insp. Report No. 1179 | | $3,606 60 | |
> | June | 9 | "      "      " 1241–1242 | | 398 05 | |
> | July | 14 | "      "      " 1264 | | 134 30 | |
> | Aug. | 15 | Cr. Memo 8–15 31567–45191 | | 1 00 | |
> | Aug. | 8 | M. C. & L. Co.'s note paid | | | |
> | | | by us | $1,250 00 | | |
> | | | Balance | 2,889 95 | | |
> | | | | | $4,139 95 | $4,139 95 |
> | | | Balance | $2,889 95 | | |
>
> We are sending you this for comparison.
>       Very truly yours,
>           LINDSLEY BROS. CO.

On or about October 14, 1903, plaintiffs gave to Lindsley Bros. Company the following statement:

> M. LINDSLEY BROS. CO., To HARSTAD & LABRE, Dr.
> Dealers in Dry Goods, Clothing, Hats, Caps, Boots, Shoes, Groceries, Hardware and Implements, Cedar Products, and Cordwood.
> Bark River, Mich.
>
> | | | | | |
> |---|---|---|---|---|
> | Sept. 14. | Your stmt | | $2,889 95 | |
> | | Our invoice 9–7 " 35 | | 27 00 | |
> | | | | $2,916 95 | |
> | 11 24. | By 60 ds. note | $600 | | |
> | Oct. 14. | By 60 ds. note | 1,500 | 2,100 00 | |
> | | | | $816 95 | |

Some time in October, 1903, plaintiff Labre went to Menominee and talked with E. A. Lindsley about their statement.   He testified:

"*Q.* You may state whether or not you made any objection to that $1,250 credit at that time?

"*A.* I just mentioned it.   *   *   *

"*Q.* What did you say to him and what did he say to you about that there?

"*A.* I says, 'I don't think this note ought to be charged to me,' so he says, 'We paid it, and it is charged,' so I didn't do anything more about it; they were ahead of me three or four thousand dollars.   After that I again went to Menominee.   I think it was a month later.   I saw Mr. George Lindsley himself in the office.   At that time the Michigan Cedar & Lumber Company was in the same office with defendant.

"*Q.* What did you go there for at that time?

"*A.* The account was running behind, and I told George Lindsley I wanted some money; I told him that they were not living up to the contract at all; the account was way past due and the stuff wasn't moving as it ought to be.   To that George said at that time he would take over the management of the Michigan Cedar & Lumber Company himself and see that everything went through all right and that everybody got their money. He and A. L. Lindsley were in there together.   A. L. Lindsley was a member of the Michigan Cedar & Lumber Company.   I understand George Lindsley was president of the Lindsley Brothers Company.   At that time I took some notes from the Michigan Cedar & Lumber Company, and some of them were renewed after that. *   *   *

"*Mr. Ryall:* Why did you take these notes?

"*Mr. Labre:* Mr. Lindsley told me that he would take the management of the company and see that everything pulled through all right and that everybody was paid.

"*The Court:* The question is, Is that the reason you took these notes of the Cedar Company?

"*Mr. Labre:* Yes, sir.

"Whereupon the court ruled to permit the answer to stand, but not for the purpose of showing any authority of the company, and an exception was duly given to the defendant.   *   *   *

"Myself nor any member of my firm never authorized

Lindsley Bros. Co. to apply that note on their account. There has never been anything said by them about applying this note on this account, or that I had authorized its application. I never received the $1,250 from Lindsley Bros. Co. except in the manner they indicate here by their paying that note."

The balance due, according to plaintiffs' statement to Lindsley Bros. Co., has been fully paid by that company. Plaintiffs also gave a statement to the Cedar Company, crediting it with one of the $1,250 notes and showing a balance due for which plaintiffs accepted three notes, the payment of which would have completely discharged the contract.  In the spring of 1904 the Cedar Company went into bankruptcy, and plaintiffs filed the three notes as claims against its estate, but afterwards, on advice of counsel, withdrew their claim and instituted the present suit against defendant.

Mr. George L. Lindsley testified:

"*Q.* Do you remember the transaction by which you received some poles from Harstad & Labre, in 1903 ?

"*A.* Well, they shipped some on a contract or a sale the Michigan Cedar & Lumber Co. made to us, yes. * * * We had nothing to do with Harstad & Labre in the purchase of these poles.

"*Q.* From whom did you buy the poles?

"*A.* Michigan Cedar & Lumber Company.  * * * Afterwards I made payments on these poles.  I made payments in the way which I did for the convenience of bookkeeping, and so that the matter of payments would go through Harstad & Labre; and we didn't care to have them go around through the Michigan Cedar & Lumber Co., but through Harstad & Labre.  We thought it simpler in bookkeeping, and otherwise.  * * *

"*Q.* You may state when the arrangement was made between you and the Cedar Company.

"*A.* When the shipment commenced—that is, when we commenced, to make payments and that is when the arrangement was made.

"*Q.* When the shipments commenced.  That was under the contract ?

"*A.* Under the contract."

At the close of the proofs defendant's counsel moved for

an instructed verdict in its favor. We are of the opinion that this motion was well founded. It is undisputed that the original contract was between plaintiffs and the Cedar Company, and that, originally, defendant contracted for the poles with the Cedar Company. It is further undisputed that the plaintiffs shipped the poles to defendant in compliance with the instructions of the Cedar Company. The contract provided for an advance payment of $2,500 and plaintiffs were paid $2,500 by the Cedar Company before they shipped a pole or a post, but by the contract they were also bound to ship the equivalent of this sum in poles or posts before they could entitle themselves to the subsequent payments. The first shipments of poles and posts, therefore, up to the amount of $2,500 were paid for in advance by the Cedar Company, belonged to it and were subject to its disposal. At the close of May 14, 1903, plaintiffs had shipped poles of the contract value of $3,606.60 and posts of the value of $513.12. Deducting the $513.12, there remained $1,986.88 worth of poles actually paid for by the Cedar Company, and sold by it to the defendant company, and as to which the plaintiffs had no claim whatever against the defendant or the Cedar Company. It turned out, however, that when the second note for $1,250 fell due August 8, 1903, the defendant, either because of its legal obligation or of some arrangement with the Cedar Company, paid the note and was, as against the Cedar Company, its vendor, legally entitled to credit therefor on the purchase price of the poles paid for by the Cedar Company. So far as the plaintiffs were concerned, having received their money on the notes, it was no concern of theirs how the notes were afterwards paid, neither was it any concern of theirs what was done with the cedar which the notes paid for, after they had delivered it in compliance with their contract. All that was done by the subsequent arrangement of the parties was to allow to the defendant the credit to which it was legally entitled.

We are also of the opinion that an account stated be-

tween the parties was conclusively established. That there was a striking of balances between the several parties, an acceptance of notes from the Cedar Company and the defendant for the balances struck, is undisputed, and we think the evidence is equally undisputed that no fraud was practiced upon the plaintiffs and that they fully understood the facts and were not laboring under any mistake, either of fact or of law.

The judgment is reversed, and a new trial ordered.

OSTRANDER, HOOKER, MOORE, and McALVAY, JJ., concurred.